# EXHIBIT C



## *PREMIER HOMEOWNERS POLICY*

**Auto Club Family Insurance Company**
**12901 North Forty Drive**
**St. Louis, Missouri 63141**
**(314) 523-7350**

A STOCK COMPANY

A SUBSIDIARY OF THE AUTOMOBILE
CLUB INTER-INSURANCE EXCHANGE

# EXHIBIT C

**THIS POLICY BOOKLET WITH THE DECLARATIONS CERTIFICATE AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.**

**READ YOUR POLICY CAREFULLY**

This is a legal contract between **you** and **us**.

# EXHIBIT C

**TABLE OF CONTENTS**

**AGREEMENT**      1

**DEFINITIONS**      1

**SECTION I – PROPERTY COVERAGES**
**COVERAGE A – DWELLING**
**COVERAGE B – OTHER STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
**COVERAGE D – LOSS OF USE**

What Property Is Covered – Coverage A and Coverage B      7
What Property Is Not Covered – Coverage A and Coverage B      8
What Property Is Covered – Coverage C      8
What Property Is Covered Subject to Individual Limit of Liability – Coverage C      9
What Property Is Not Covered – Coverage C      12
What Property Is Covered – Coverage D      14
Other Coverages – Section I      15
What Losses Are Covered – Coverage A and Coverage B      26
What Losses Are Covered – Coverage C      27
What Losses Are Not Covered – Exclusions - Section I      30
Conditions – Section I      39

**SECTION II – LIABILITY COVERAGES**
**COVERAGE E – PERSONAL LIABILITY**
**COVERAGE F – MEDICAL PAYMENTS TO OTHERS**

What Losses Are Covered – Coverage E      47
What Losses Are Covered – Coverage F      48
What Losses Are Not Covered – Exclusions - Section II      49
Additional Payments – Section II      56
Conditions – Section II      59

**SECTION III – GENERAL PROVISIONS**
AAA Membership Requirement      63
Bankruptcy      63
Changes and Liberalization      63
Concealment or Misrepresentation      63
Inflation Guard      64
Policy Period      64
Statements in the Application For Insurance      64

# EXHIBIT C

Subrogation                           65
Termination                           66
Transfer or Assignment                67
Your Premium                          68

# EXHIBIT C

## AGREEMENT

**We** will provide the insurance **you** have selected in return for the premium due **us** and **your** compliance with all policy provisions. **Your** declarations page shows the policy period, the premises to which this insurance applies, the coverages and limits **you** have chosen and **your** premium. Insurance under this policy is provided only for the coverages stated in the declarations. The declarations page is part of this policy.

## DEFINITIONS

Throughout this policy, certain words and phrases have a defined meaning when printed in **bold** type.

**We**, **us** or **our** means the Auto Club Family Insurance Company.

**You** or **your** means any **insured** named in the declarations. If there is only one **insured** named in the declarations and that **insured** is a natural person, **you** or **your** includes that person's spouse if that spouse lives in the same household on a regular, continuous and permanent basis.

**Actual cash value** – means the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for physical deterioration, **depreciation** and obsolescence. **Actual cash value** applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage. The **actual cash value** of the lost or damaged property may be significantly less than its replacement value.

**Bodily injury** – means bodily harm, bodily sickness or bodily disease, including death that results. **Bodily injury** does not include damages for mental anguish, emotional distress or similar damages unless such damages are directly caused by actual physical injury to the person claiming damages.

1

# EXHIBIT C

**Business** – means any full or part time activity from which any **insured** may derive an economic benefit, regardless of profit or loss. **Business** includes, but is not limited to, commercial enterprise, trade, hobby, profession, occupation or employment, or the renting, leasing or holding for rental or lease of any part of any premises by any **insured**.

If an **insured** provides home day care services to a person or persons other than **insureds** and receives monetary or other compensation for such services, that activity is a **business**. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an **insured** to a relative of an **insured** is not considered a **business**.

**Depreciation** - means the lessening of the economic value of any property because of age, wear and tear or obsolescence.

**Drug** - means any controlled substance as defined by federal or state law. **Drug** includes but is not limited to cocaine, LSD, marijuana, methamphetamine and all narcotics.

**Electronic data processing equipment** – means:

1. Computer hardware, including any:
   a. internal and external components;
   b. peripheral devices; and
   c. storage or recording media.

2. Computer software, meaning computer:
   a. programs; and
   b. applications.

**Fungi** - means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by **fungi**. Under SECTION II, this does not include any **fungi** that are, are on, or are contained in, products or goods intended for consumption.

**Insured** - means **you** and people who live in the **residence premises** on a regular, continuous and permanent basis who are:

2

# EXHIBIT C

1. **Your** relatives by blood, marriage or adoption.

2. Any other person under the age of 21 who is in the care of **you** or any person included under 1. above.

Under SECTION II **insured** also means:

3. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by **you** or any person included in 1. or 2. above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without permission of the owner is not an **insured**.

4. With respect to any **motorized vehicle** to which this policy applies:
   a. any **residence employee** while engaged in **your** employ or the employ of any person included in 1. or 2. above; or
   b. other persons using the **motorized vehicle** on an **insured location** with **your** expressed permission.

**Insured location** - means:

1. The **residence premises**.

2. **Insured location** also means that part of any other premises, other structures and grounds used by **you** as a residence and:
   a. shown in the declarations; or
   b. acquired by **you** during the current policy period for **your** use as a residence.

3. Any premises used by **you** in connection with a premises listed in 1. or 2. above.

4. Any part of any premises not owned by any **insured** where any **insured** is temporarily residing.

5. Vacant land, other than farm land, owned by or rented or leased to any **insured**.

3

# EXHIBIT C

6.  Land owned by or rented or leased to any **insured** on which a one or two family dwelling is being constructed as a residence for any **insured**.

7.  Individual or family cemetery plots or burial vaults of any **insured**.

8.  Any part of a premises occasionally rented to any **insured** for other than **business** purposes.

**Motorized vehicle** - means a self-propelled land or amphibious vehicle, regardless of method of surface contact. **Motorized vehicle** includes parts and equipment.

**Motorized vehicle registration** - means any licensing, fees, registration or other process that must be completed with any governmental entity that is required by any ordinance, statute or regulation. **Motorized vehicle registration** is not limited to registration of **motorized vehicles** for use on the public highways, and includes any and all fees, licensing and/or registration of **motorized vehicles** pursuant to applicable law.

**Occurrence** - means an accident, including continuous or repeated injurious exposure to essentially the same conditions, which, during the policy period, results in **bodily injury** or **property damage**. **Occurrence** does not include any claim arising out of a breach of a contractual obligation, express or implied warranty or any negligent or intentional misrepresentation relating to a contract or express or implied warranty. Continuous or repeated injurious exposure to the same or similar conditions is considered to be one **occurrence**.

**Personal injury** - means injury during the policy period which arises out of one or more of the following:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution, provided all actions of any **insured** or on behalf of any **insured** which gave rise to the claim of malicious prosecution occurred during the time that **insured** has been

4

# EXHIBIT C

continuously insured under this or any other homeowners policy issued by **us**;

3. libel, slander or defamation of character, provided the first publication or utterance which gave rise to the claim of libel, slander or defamation of character was made by or on behalf of any **insured** during the time that **insured** has been continuously insured under this or any other homeowners policy issued by **us**; or

4. invasion of privacy, wrongful eviction or wrongful entry.

**Pollutants** - means any solid, liquid, gaseous or thermal irritant or contaminant arising from any source whether industrial or otherwise, including but not limited to, asbestos, radon, carbon monoxide gas, fuel oil, gasoline, lead and any products containing lead, PCB, smoke, vapor, soot, fumes, acids, alkalis, chemicals, insecticides and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Property damage** - means physical injury to or destruction of tangible property, including all resulting loss of use of that property. **Property damage** does not include any amounts sought for pecuniary or economic losses.

**Punitive damages** - means amounts of money awarded or imposed to punish, deter or to make an example of a wrongdoer and includes, but is not limited to, exemplary damages and/or aggravated/aggravating circumstances damages, whether imposed pursuant to common law, statutes, ordinances or regulations.

**Remediation** - means the reasonable and necessary treatment, containment, removal or disposal of **fungi**, wet rot, dry rot, or bacteria, including any costs thereof. **Remediation** also includes any testing to detect, measure or evaluate **fungi**, wet rot, dry rot, or bacteria.

# EXHIBIT C

**Replacement cost** – means:

1.  With respect to buildings and structures that are not buildings, the lesser of the cost, at the time of the loss, to repair or to replace covered, damaged or destroyed property:
    a.  at the **residence premises**;
    b.  for the same use; and
    c.  with materials of like or reasonably similar kind and quality.

    **Replacement cost** does not include:
    a.  loss to any property;
    b.  the cost of repairing, reconstructing or demolishing any property; or
    c.  the cost of removing the debris of any property;
    occurring as a result of the enforcement of any building ordinance or law.

    However, limited building ordinance or law coverage for the dwelling is provided under provision 4. ORDINANCE OR LAW of OTHER COVERAGES – SECTION I.

2.  With respect to personal property, the cost, at the time of the loss, of new property:
    a.  identical to the lost or damaged property; or
    b.  of like or reasonably similar kind and quality and of comparable usefulness as the lost or damaged property if identical property is not obtainable.

**Residence employee** – means an employee of any **insured** who:

1.  performs duties in connection with the maintenance or use of the **residence premises**, including household or domestic services; or

2.  who performs duties elsewhere of a similar nature not in connection with the **business** of any **insured**.

# EXHIBIT C

**Residence premises** - means:

1.  the single-family dwelling, including other structures and grounds, where **you** reside on a regular, continuous and permanent basis and which is shown as the **residence premises** in the declarations; or a two-family dwelling where **you** reside on a regular, continuous and permanent basis in at least one of the family units and which is shown as the **residence premises** in the declarations; or

2.  that part of any additional building where **you** reside on a seasonal or temporary basis and is shown as the **residence premises** in the declarations.

**Theft** – means the unlawful taking and carrying away of property from another person with the intent to deprive the other person of that property. **Theft** includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

## SECTION I – PROPERTY COVERAGES

**COVERAGE A – DWELLING**
**COVERAGE B – OTHER STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
**COVERAGE D – LOSS OF USE**

**WHAT PROPERTY IS COVERED – COVERAGE A AND COVERAGE B**

1.  Under COVERAGE A, **we** cover:
    a. the dwelling on the **residence premises** shown in the declarations, where **you** reside on a regular, continuous and permanent basis, including structures attached to the dwelling;
    b. materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises**;

# EXHIBIT C

    c.  wall to wall carpeting installed in the dwelling on the **residence premises**; and

    d.  outdoor antennas on the **residence premises**.

2.  Under COVERAGE B, **we** cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to COVERAGE A. Use of this coverage does not reduce the COVERAGE A limit of liability.

## WHAT PROPERTY IS NOT COVERED – COVERAGE A AND COVERAGE B

1.  Under COVERAGES A and B, **we** do not cover:

    a.  any land, including the land supporting the dwelling or other structures;

    b.  the cost to replace, rebuild, stabilize or otherwise restore land; or

    c.  the cost of any device or treatment applied to land for the purpose of adding, protecting or restoring the stability of any structure supported by that land.

2.  In addition, under COVERAGE B, **we** do not cover other structures:

    a.  used in whole or in part for any **business**; or

    b.  rented or held for rental to any person not a resident of the dwelling, unless used solely as a private garage.

## WHAT PROPERTY IS COVERED – COVERAGE C

Under COVERAGE C, **we** cover personal property owned or used by any **insured** while it is anywhere in the world.

At **your** request, **we** also cover personal property:

# EXHIBIT C

1.  owned by others, while the property is on the part of the **residence premises** occupied solely by persons defined as **insureds**; or

2.  owned by a guest or a **residence employee** while the property is in any residence occupied by an **insured**.

**Our** limit of liability for personal property usually located at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for COVERAGE C. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time **you** begin to move the property there.

Our limit of liability for personal property owned or used by an **insured** and located in a self-storage facility is 10% of the limit of liability for COVERAGE C, or $1,000, whichever is greater. However, this limitation does not apply to personal property moved from the **residence premises** because the **residence premises** is:

1.  being repaired, renovated or rebuilt; and
2.  not fit to live in or store property in.

**WHAT PROPERTY IS COVERED SUBJECT TO INDIVIDUAL LIMITS OF LIABILITY – COVERAGE C**

Individual limits of liability apply to certain categories of personal property. These limits do not increase the COVERAGE C limit of liability. The limit shown below for each category is the most **we** will pay for each loss to all property in that category. The lowest applicable limit shall apply to property that falls into more than one category.

1.  $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, medals, coins, coin collections and other numismatic property.

2.  $1,000 on securities; accounts; deeds; evidences of debt; letters of credit; notes, other than bank notes; checks; other negotiable instruments; stored value cards; manuscripts;

# EXHIBIT C

passports; tickets; personal records; personal data; stamps; stamp collections and other philatelic property.

This limit:

a. Applies regardless of the type of medium on which these items are stored; such as paper, films, tapes, or discs.
b. Includes the cost of researching, retrieving, restoring, or replacing any lost, damaged or destroyed information in these items.

3. $1,000 on camper bodies, slide-on campers or camper shells not permanently attached to a **motorized vehicle**.

4. $1,500 on watercraft, including their trailers, coverings, furnishings, equipment and outboard engines or motors.

5. $1000 on trailers or semi-trailers not used with watercraft.

6. $2,500 on property, on the **residence premises**, used at any time or in any manner for any **business** purpose.

7. $500 on property, away from the **residence premises**, used at any time in the past, present or future, or in any manner for any **business** purpose. However, this limit does not apply to loss to adaptable portable electronic equipment as described in Individual Limits of Liability for provisions 14, 15. and 16. below.

8. $1,000 for loss by **theft** of:
a. jewelry and watches;
b. precious and semiprecious stones, including items that derive their principal value from precious or semiprecious stones; and
c. furs, whether used for utilitarian or ornamental purposes. This includes items that derive their principal value from fur.

9. $2,500 for loss by **theft** of silverware, silver-plated ware, goldware, gold-plated ware and pewterware including:

# EXHIBIT C

    a. flatware, hollowware, tea or coffee sets, trays, trophies or similar items; and
    b. other utilitarian items made of or including silver, gold or pewter.

10. $2,000 for loss by **theft** of firearms.

11. $2,500 for loss by **theft** of valuable rugs, carpets, tapestries and wallhangings, whether used for utilitarian or ornamental purposes.

12. a. $10,000 for loss by **theft** of tools from the **residence premises**.
    b. $2,500 for loss by **theft** of tools while located away from the **residence premises**.

13. a. $5,000 on **electronic data processing equipment** whether or not used in **business**, while located on the **residence premises**.
    b. $1,500 on **electronic data processing equipment** while located away from the **residence premises**.

14. $1,500 on portable electronic equipment that:
    a. reproduces, receives or transmits audio, visual or data signals;
    b. is designed to be operated by more than one power source, one of which is a **motorized vehicle's** electrical system; and
    c. is in or upon a **motorized vehicle**.

15. $1,500 on property, away from the **residence premises**, used primarily for **business** purposes. However, this limit does not apply to antennas, tapes, cassettes, wires, cables, records, discs or other media that are:
    a. used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and
    b. in or upon a **motorized vehicle**.

16. $250 on antennas, tapes, cassettes, wires, cables, records, discs or other media that are:
    a. used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

# EXHIBIT C

b. in or upon a **motorized vehicle**.

17. $2,500 on collectibles that have no intrinsic monetary value but derive their value solely from their desirability to collectors, including but not limited to sports cards, campaign buttons and similar political memorabilia, comic books, movie posters, plates and figurines.

**WHAT PROPERTY IS NOT COVERED – COVERAGE C**

Under COVERAGE C, **we** do not cover:

1. Property that is specifically insured and that is separately described, either individually or as a class, in this or any other insurance.

2. Animals of any kind.
3. **Motorized vehicles** including:
   a. equipment permanently attached;
   b. equipment designed for use with a **motorized vehicle** as a means of transportation while located in or upon a **motorized vehicle**; or
   c. camper bodies, slide–on campers or camper shells while located in or upon but not permanently attached to a **motorized vehicle**.

   **We** do cover **motorized vehicles** not subject to **motorized vehicle registration** and:
   a. designed to assist and used by the physically handicapped; or
   b. used exclusively to service an **insured's** residence.

4. Any devices or instruments for the transmission, recording, reception or reproduction of sound and/or pictures if permanently installed in a **motorized vehicle**, trailer or watercraft, including, but not limited to:
   a. their accessories and antennas; or
   b. tapes, cassettes, wires, cables, records, discs or other media for use with any such devices or instruments;
   while located in or upon the **motorized vehicle**, trailer or watercraft.

12

# EXHIBIT C

5.  Aircraft and parts. Aircraft means any contrivance used or designed for navigation of or flight in the air, except model aircraft of the hobby variety not used or designed to carry people or cargo.

6.  Property of roomers, boarders or other residents of the **residence premises** not related to any **insured**.

7.  Property in an apartment regularly rented or held for rental to others by any **insured**, except as provided under provision 15. LANDLORD'S FURNISHINGS of OTHER COVERAGES – SECTION I.

8.  Property rented, leased or held for rental or lease to others away from the **residence premises**.

9.  **Business** records or **business** data, regardless of the type of medium. Medium can include, but is not limited to; paper, films, tapes or discs on which the records or data are stored. **We** will pay for blank or unexposed media of the type used for the storage of the lost or damaged **business** records or **business** data.

10. Computer software that, at the time of the loss, cannot be replaced on the retail market with other of like or reasonably similar kind and quality. This includes later releases of the same software. **We** will pay for blank or unexposed media of the type used for the storage of computer software that cannot be replaced.

11. Credit cards or fund transfer cards, except as provided under provision 10. CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY of OTHER COVERAGES – SECTION I.

EXHIBIT C

**WHAT PROPERTY IS COVERED – COVERAGE D**

The limit of liability for COVERAGE D is the actual loss sustained within 12 months from the date of the loss and shall not exceed 30% of the COVERAGE A amount for 1. and 2. below.

1.    If a loss covered under this Section makes that part of the **residence premises** where **you** reside not fit to live in, **we** cover, at **your** choice, either of the following. However, if the **residence premises** is not **your** dwelling where **you** reside on a regular, continuous and permanent basis, **we** will not provide the option under paragraph b. below.

    a.  Additional Living Expense, meaning any necessary increase in living expenses incurred by **you** so that **your** household can maintain its normal standard of living; or

    b.  Fair Rental Value, meaning the fair rental value of that part of the **residence premises** where **you** reside less any expenses that do not continue while the premises is not fit to live in.

    Payment under a. and b. will be for the shortest time required to repair or replace the damage or, if **you** permanently relocate, the shortest time required for **your** household to permanently relocate elsewhere.

    However, any LOSS OF USE expense due to **fungi**, wet or dry rot, or bacteria will not be paid in addition to any amount paid or payable under provision 12. **FUNGI**, WET OR DRY ROT, OR BACTERIA of OTHER COVERAGES – SECTION I.

2.    Actual loss of rental income while that part of the **residence premises** that is actually rented or leased to others is unfit to live in. **Our** payment shall be reduced by the expenses that do not continue while the rented part of the **residence premises** is unfit to live in.

    Payment shall be for the shortest time required to repair or replace the damage or, if **you** permanently relocate, the shortest time

# EXHIBIT C

required to establish **your** household elsewhere.

However, any LOSS OF USE expense due to **fungi**, wet or dry rot, or bacteria will not be paid in addition to any amount paid or payable under provision 12. **FUNGI**, WET OR DRY ROT, OR BACTERIA of OTHER COVERAGES – SECTION I.

3.   If a civil authority prohibits **you** from occupying the **residence premises** as a result of direct damage to neighboring property by a cause of loss covered under SECTION I, **we** will pay any reasonable and necessary increase in living expenses as described under 1. above, and actual loss of rental income as described under 2. above for a period not exceeding two weeks and shall not exceed $5,000 while occupancy is prohibited.

The periods of time under 1., 2. and 3. above are not limited by the expiration of the policy; however, the events causing the **residence premises** to become unfit to live in, or the order of civil authorities prohibiting **you** from occupying the **residence premises**, must occur during the policy period.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

## OTHER COVERAGES – SECTION I

1.   REMOVAL OF FALLEN TREES
     **We** will also pay **your** reasonable expense, up to $500, for the removal from the **residence premises** of:
     a.   **your** tree(s) felled by the peril of WINDSTORM OR HAIL;
     b.   **your** tree(s) felled by the peril of WEIGHT OF ICE, SNOW OR SLEET; or
     c.   a neighbor's tree(s) felled by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE C;
     provided the tree(s) damages a covered structure. The $500 limit is the most **we** will pay in any one loss regardless of the number of fallen trees.

# EXHIBIT C

This coverage is additional insurance.

2.   TREES, SHRUBS AND OTHER PLANTS
**We** cover outdoor trees, outdoor shrubs, outdoor plants or lawns on the **residence premises** for loss by the following: fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned or operated by a resident of the **residence premises**, vandalism or malicious mischief or **theft**.

**We** do not cover property grown for **business** purposes.

**Our** limit of liability shall not exceed 5% of the amount of the limit of liability of COVERAGE A for all outdoor trees, outdoor shrubs, outdoor plants or lawns, nor more than $500 for any one tree, shrub or plant.

This coverage is additional insurance.

3.   FIRE DEPARTMENT SERVICE CHARGE
**We** will pay up to $2,500 for **your** liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C. **We** do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

4.   ORDINANCE OR LAW
a.   **You** may use up to $5,000 for the increased costs **you** incur due to the enforcement of any ordinance or law which requires or regulates:
(1) the construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a cause of loss

# EXHIBIT C

  identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C;

(2) the demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C to another part of that covered building or other structure; or

(3) the remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C.

b. **You** may use all or part of this ordinance or law coverage to pay for the increased costs **you** incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. **We** do not cover:

(1) any additional cost resulting from the enforcement of any ordinance or law **you** were required to comply with before the loss to the dwelling occurred, but failed to do so;

(2) the loss in value to any covered building or other structure due to the requirements of any ordinance or law;

(3) the costs to comply with any ordinance or law which requires or regulates the replacement, rebuilding, stabilization or other restoration of the land supporting the dwelling, or the application of any device or treatment to any land for the

# EXHIBIT C

       purpose of adding, protecting or restoring the stability of the dwelling; or

(4)  the costs to comply with any ordinance or law which requires or regulates any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants** on any covered building or other structure. This exception applies even if the irritant or contaminant has a function with respect to **your** property or **business**.

This coverage is additional insurance.

5.    LOCKS
**We** will pay up to $250 in the aggregate per policy period to replace the exterior door lock or lock cylinder of the **residence premises** with a lock of like kind and quality when a key to the lock has been stolen during a **theft** of other personal property for which coverage is provided by this policy.

**You** must report the **theft** to **us** and to the police within 72 hours after discovery.

The policy deductible does not apply to this coverage.

6.    REMOVAL OF DEBRIS AND VOLCANIC ASH
**We** will pay reasonable expenses actually incurred by **you** in the removal of:

a.  debris of covered property, provided the loss to the property is from a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C, as applicable to the property; or

b.  that portion of volcanic ash, dust or particulate matter that has caused direct loss to a building or to property contained in a building covered under SECTION I.

The expense for the removal of debris and volcanic ash is included in the amount of the

# EXHIBIT C

limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for the removal of debris and volcanic ash exceeds the amount of the limit of liability for the damaged property, an additional 5% of the amount of that limit of liability will be available to cover the expense of removing debris and volcanic ash.

One or more volcanic eruptions that occur within a 168 hour period will be considered as one volcanic eruption.

7.  REASONABLE EMERGENCY MEASURES
    **We** will pay reasonable expenses actually incurred by **you** for necessary emergency measures taken solely to protect covered property from further damage after a loss covered under SECTION I. If this involves repair to property other than the property to be protected, **we** will pay only for the repair of other property that is covered under SECTION I and damaged by a cause of loss covered under SECTION I.

    This coverage:
    a.  Does not increase the limit of liability that applies to the covered property.
    b.  Does not relieve **you** of **your** duties, in case of a loss to covered property, as set forth in provision 4.b. of CONDITIONS – SECTION I.

8.  PROPERTY REMOVED
    **We** insure covered property against direct loss from any cause while being removed from a premises endangered by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

# EXHIBIT C

9. REFRIGERATED FOOD SPOILAGE
**We** will pay up to $250 in the aggregate per policy period for damage to or spoilage of perishable foods owned by any **insured** and kept in a refrigerator or freezer located on the **residence premises** if the loss results from:
a. interruption of power to the refrigerator or freezer caused by damage to or failure of the generating or transmitting equipment; or
b. mechanical breakdown of the refrigerator or freezer.

This coverage:
a. is voided by the negligence of any **insured** in:
   (1) maintaining:
      (a) the refrigerator or freezer in working condition; or
      (b) the supply of electricity to the refrigerator or freezer; and
   (2) protecting food after a known loss; and
b. does not increase the limit of liability of COVERAGE C.

No deductible applies to this coverage.

10. CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY
**We** will pay up to $500 for:
a. the legal obligation of any **insured** to pay because of the **theft** or unauthorized use of any credit card issued to or registered in any **insured's** name;
b. loss resulting from the **theft** or unauthorized use of any fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any **insured's** name;
c. loss to any **insured** caused by the forgery or alteration of that **insured's** check or other negotiable instrument; or
d. loss to any **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

# EXHIBIT C

All loss resulting from a series of acts committed by any one person, or in which any one person is concerned or implicated, is considered to be one loss.

**We** do not cover:
a.  the **theft** or unauthorized use of any credit or fund transfer card by:
    (1) an **insured** or any other regular resident of the **residence premises**;
    (2) any person who has been entrusted with the credit or fund transfer card; or
    (3) any person if any **insured** has not complied with all terms and conditions under which the credit or fund transfer card is issued;
b.  loss to any **insured** caused by the forgery or alteration of any **insured's** check or other negotiable instrument by an **insured** or any other occupant of the **residence premises**;
c.  loss to any **insured** caused by any **insured's** acceptance of any check or other negotiable instrument that has been altered or forged, or that is dishonored by the financial institution upon which it is drawn; or
d.  loss arising out of the **business** or dishonesty of any **insured**.

If a suit is brought:
a.  against any **insured** for liability under the CREDIT CARD or FUND TRANSFER CARD coverage, **we** will provide a defense at **our** expense by lawyers of **our** choice; and
b.  for the enforcement of payment under the FORGERY coverage, **we** have the option to defend, at **our** expense, an **insured** or an **insured's** financial institution.

**We** may make settlement of any claim or lawsuit as **we** think appropriate. **Our** obligation to defend any claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.

# EXHIBIT C

This coverage is additional insurance. No deductible applies to this coverage.

11. ABRUPT COLLAPSE

   **We** will cover property insured under SECTION I against accidental direct physical loss from the abrupt collapse of a building or part of a building if caused by or resulting from:

   a. any cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE C;

   b. weight of ice, snow or sleet, or weight of rain which collects on a roof;

   c. decay of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an **insured** prior to the abrupt collapse;

   d. insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an **insured** prior to the abrupt collapse;

   e. weight of contents, equipment, people or animals; or

   f. use of defective materials or methods in construction, repair, remodeling or renovation if the abrupt collapse occurs during the construction, repair, remodeling or renovation.

   Abrupt collapse means the abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

   Abrupt collapse does not apply to:

   a. a building or any part of a building that is merely in danger of abrupt collapse;

   b. a part of a building that is standing, even if it has separated from another part of the building; or

   c. a building or any part of a building that is standing, even if it shows evidence of collapse, cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansions.

# EXHIBIT C

Loss to an awning, fence, patio, driveway or walkway, spa, swimming pool, pond, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, pier, bulkhead, wharf or dock, all whether or not attached to the dwelling or any other building on the **residence premises**, is not covered unless the loss is a direct result of the abrupt collapse of a building or any part of it.

This coverage does not increase the amount of the limit of liability applicable to the property damaged or destroyed by abrupt collapse.

12. **FUNGI**, WET OR DRY ROT, OR BACTERIA
   If a loss caused by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C results in **fungi**, wet or dry rot, or bacteria, **we** will pay for:
   a. **remediation** of the **fungi**, wet or dry rot, or bacteria. This includes payment for the reasonable and necessary cost to:
      (1) remove the **fungi**, wet or dry rot, or bacteria from covered property or to repair, restore or replace that property; and
      (2) tear out and replace any part of the building as needed to gain access to the **fungi**, wet or dry rot, or bacteria.
   b. any reasonable and necessary increase in living expense **you** incur so that **your** household can maintain its normal standard of living or loss of fair rental value if the **fungi**, wet or dry rot, or bacteria makes the **residence premises** not fit to live in. **We** do not cover loss or expense due to cancellation of a lease or agreement; and
   c. any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the **fungi**, wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is reason to believe that

23

# EXHIBIT C

there is the presence of **fungi**, wet or dry rot, or bacteria.

**We** will pay under this additional coverage only if:

a. the covered loss occurs during the policy period;

b. all reasonable means were used to save and preserve the property at the time of and after the covered loss; and

c. **we** receive prompt notice of the covered cause of loss that is alleged to have resulted in **fungi**, wet or dry rot, or bacteria.

The most **we** will pay under this coverage is $5,000. This is the most **we** will pay for the policy period regardless of the number of losses.

This coverage does not increase the amount of the limit of liability applicable to the property damaged or destroyed. The policy deductible will apply to this additional coverage.

13. LOSS ASSESSMENT
**We** will pay up to $1,000 for **your** share of loss assessment charged during the policy period against **you** by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B, other than earthquake or land shock waves, or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises**.

**We** do not cover loss assessments charged against **you** or a corporation or association of property owners by any governmental body.

# EXHIBIT C

The limit of $1,000 is the most **we** will pay with respect to any one loss, regardless of the number of assessments.

POLICY PERIOD, under SECTION III - GENERAL PROVISIONS, does not apply to this coverage.

14. GLASS OR SAFETY GLAZING MATERIAL
   a. **We** cover:
      (1) the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;
      (2) the breakage, caused directly by earth movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and
      (3) the direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.
   b. This coverage does not include loss:
      (1) to covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or
      (2) on the **residence premises** if the dwelling has been vacant or unoccupied for more than 30 days immediately before the loss, except when the breakage results directly from earth movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this OTHER COVERAGE 14. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

# EXHIBIT C

15. LANDLORD'S FURNISHINGS

**We** will pay up to $2,500 for **your** appliances, carpeting and other household furnishings, in each apartment on the **residence premises** regularly rented or held for rental to others by an **insured**, for loss caused by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE C, other than **Theft**.

This limit is the most **we** will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

16. GRAVE MARKERS

**We** will pay up to $5,000 for grave markers, including mausoleums, on or away from the **residence premises** for loss caused by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

17. ARSON REWARD

With the exception of law enforcement officers, police officers or firefighters, **we** will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

## WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B

**We** insure against direct physical loss to property described in COVERAGES A and B unless the loss is excluded in WHAT LOSSES ARE NOT COVERED – EXCLUSIONS - SECTION I.

# EXHIBIT C

**WHAT LOSSES ARE COVERED – COVERAGE C**

**We** insure for direct physical loss to the property described in COVERAGE C caused by a peril listed below unless the loss is excluded in WHAT LOSSES ARE NOT COVERED – EXCLUSIONS – SECTION I.

1. FIRE OR LIGHTNING.

2. WINDSTORM OR HAIL.
   **We** do not cover loss from sand, dust, rain, snow or sleet to property contained in a building unless the direct force of wind or hail damages the building, causing an opening in a roof or wall, and the sand, dust, rain, snow or sleet enters through this opening.

   **We** do not cover loss from windstorm or hail to watercraft and their trailers, furnishings, equipment and outboard motors while not inside a fully enclosed building.

3. EXPLOSION.

4. RIOT OR CIVIL COMMOTION.

5. AIRCRAFT, including self–propelled missiles and spacecraft.

6. VEHICLES.

7. SUDDEN AND ACCIDENTAL DAMAGE FROM SMOKE.
   **We** do not cover loss caused by smoke from agricultural smudging or industrial operations.

8. VANDALISM OR MALICIOUS MISCHIEF.
   **We** do not cover vandalism or malicious mischief if the dwelling has been vacant for more than 30 days prior to the loss. For the purposes of this provision, a dwelling being constructed is not considered vacant.

9. **THEFT**.
   **We** do not cover loss caused by **theft**:
   a. committed by or at the direction of any **insured** or any other regular resident of the

# EXHIBIT C

**residence premises**, except a **residence employee**;

b. in or to a dwelling or other structure under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

c. from that part of the **residence premises** rented or leased by any **insured** to a person other than an **insured**; or

d. occurring away from the **residence premises**:

(1) of property while at any other residence owned by, rented, leased to or occupied by any **insured**, except while an **insured** is temporarily residing there;

(2) of watercraft, including their furnishings, equipment and outboard motors;

(3) of trailers including their furnishings and equipment; or

(4) of camper bodies, slide–on campers or camper shells not permanently attached to a **motorized vehicle**, including their furnishings and equipment.

10. FALLING OBJECTS.
**We** do not cover loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. WEIGHT OF ICE, SNOW OR SLEET which causes damage to property contained in a building.

12. SUDDEN AND ACCIDENTAL DISCHARGE OR OVERFLOW OF WATER OR STEAM from within:

a. a plumbing system;

b. a heating system;

c. an air conditioning system;

d. an automatic fire protective sprinkler system; or

e. a household appliance.

# EXHIBIT C

**We** do not cover loss:
a. caused by or resulting from freezing;
b. to the appliance from which the water or steam escaped; or
c. on the **residence premises** caused by or resulting from accidental discharge or overflow of water or steam that occurs off the **residence premises**.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. SUDDEN AND ACCIDENTAL TEARING APART, cracking, burning or bulging of:
a. a steam or hot water heating system;
b. an air conditioning system;
c. an automatic fire protective sprinkler system; or
d. an appliance for heating water.

**We** do not cover loss caused by or resulting from freezing.

14. FREEZING of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

**We** do not cover loss on the **residence premises**, while the dwelling is unoccupied and **you** have not used reasonable care:
a. to maintain heat in the building; or
b. to shut off the water supply and drain the system and appliances of water.

15. SUDDEN AND ACCIDENTAL DAMAGE from artificially generated electrical current.

16. VOLCANIC ERUPTION other than loss caused by earthquake, land shock waves or tremors. One or more volcanic eruptions occurring within a 168 hour period shall be considered one volcanic eruption.

# EXHIBIT C

**WHAT LOSSES ARE NOT COVERED –
EXCLUSIONS – SECTION I**

1. **We** do not insure for any loss to property under COVERAGES A, B or C caused directly or indirectly by any of the following exclusions or arising from any of the following exclusions, regardless of the cause of the excluded event or damage; other causes of the loss; whether any other cause or event acts concurrently or in any sequence with the excluded event to produce the loss; whether the loss or event occurs suddenly or gradually, involves isolated or widespread damage or occurs as a result of any combination of these; or whether the loss is caused by, results from, consists of, involves or is contributed to by natural, human, animal or plant forces.

   a. EARTH MOVEMENT, meaning:
      (1) earthquake, including land shock waves or tremors before, during or after a volcanic eruption; or
      (2) landslide; mudflow; mine subsidence; erosion; earth expanding, contracting, sinking, rising or shifting, all whether combined with water or not.
      This exclusion applies regardless of whether the loss is caused by or results from human, animal, plant or naturally occurring forces, or however caused.

      **We** do cover direct physical loss by:
      (1) FIRE;
      (2) EXPLOSION; or
      (3) breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;
      resulting from earth movement.

   b. ORDINANCE OR LAW, meaning the enforcement, whether or not in connection with a physical loss to buildings or other structures covered under SECTION I, of any ordinance or law:
      (1) Requiring or regulating the demolition, construction, repair, reconstruction, remodeling, renovation, placement,

# EXHIBIT C

stabilization or use of buildings or other structures unless specifically covered under provision 4. ORDINANCE OR LAW of OTHER COVERAGES – SECTION I, or under provision 6. Glass Replacement of CONDITIONS – SECTION I.

For the purposes of section b. (1), loss means:

    (a) loss or damage caused directly or indirectly by the enforcement of any building ordinance or law;

    (b) any additional cost of repair, reconstruction, demolition or debris removal incurred to comply with any building ordinance or law.

  (2) Requiring or regulating the testing for, cleanup or removal of, or other specified treatment of **pollutants**.

  (3) Requiring or regulating the **remediation** of **fungi**, wet rot, dry rot, or bacteria, except as specifically covered under provision 12. **FUNGI**, WET OR DRY ROT, OR BACTERIA of OTHER COVERAGES – SECTION I.

  (4) Resulting in a lessening of the value of any property insured under SECTION I.

This exclusion applies whether or not the property has been physically damaged or even if the irritant or contaminant has a function with respect to **your** property or **business**.

**We** do cover direct physical loss caused by or resulting from the actions of civil authorities to prevent the spread of fire unless the fire itself is a loss not covered under SECTION I.

c.   WATER DAMAGE, meaning loss caused by or consisting of:

  (1) flood, surface water, waves, tidal water, tsunami, seiche, storm surge, breach or overflow or failure of levees or dikes, overflow of a body of water, or

# EXHIBIT C

spray from any of these, whether or not driven by wind;

(2) water or water-borne material or any liquid or semi-liquid substance which backs up through sewers or drains or which overflows from a sump pump, sump pump well or any other device designed to remove water or water-borne material or any liquid or semi-liquid substance from the **residence premises**;

(3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, spa, pond or other structure;

(4) water which is released, overflows or escapes from a dam, levee or other structure designed to contain surface water; or

(5) damage to the interior of a building from rain, snow or sleet, unless the wall or roof of the building has first sustained a loss from a cause of loss covered in SECTION I, that created an opening through which the rain, snow or sleet entered;

whether caused by or resulting from human, animal, plant or naturally occurring forces, or however caused.

Direct loss by FIRE, EXPLOSION or **THEFT** resulting from water damage is covered.

d. NEGLECT, meaning neglect of any **insured** to take all reasonable steps to:

(1) save and preserve property at and after the time of a loss, or when the property is endangered by cause of loss **we** cover; or

(2) eliminate or reduce any conditions on the **residence premises** that contributed to loss or caused damage in the past, whether or not an insurance claim was made.

32

# EXHIBIT C

e.  WAR, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, including any consequence of any of these.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f.  NUCLEAR HAZARD, means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

Loss caused by the nuclear hazard will not be considered loss caused by FIRE, EXPLOSION or smoke, whether these perils are specifically named in or otherwise included within a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B, or WHAT LOSSES ARE COVERED – COVERAGE C in SECTION I.

This policy does not apply under SECTION I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

g.  INCREASED HAZARD, meaning loss while the hazard is increased by any means within the control or knowledge of the **insured**.

h.  INTENTIONAL LOSS, which is either expected or intended by any **insured** or which is the result of any **insured's** intentional or criminal acts. Any **insured** is deemed to intend the natural and probable consequences of his or her actions.

# EXHIBIT C

However, this exclusion will not apply to a victim of domestic violence when such coverage would otherwise be excluded under this provision if the **insured**:

(1) files a police report; and
(2) completes a sworn affidavit for the insurer that indicates both:
    (a) the cause of the loss; and
    (b) a pledge to cooperate in any criminal prosecution of the person committing the act causing this loss.

If payment is made to a victim of domestic violence, payment to the victim of domestic violence shall be limited to such victim's ownership interest in the property reduced by any payment to a mortgagee or other secured interest. However, **we** shall not be required to make any subsequent payment to any other **insured** for the part of any loss for which the victim of domestic violence has received payment. In no event will **we** pay more than the Limit of Liability.

i. INTERRUPTION OF POWER or other utility service if the cause of that interruption takes place away from the **residence premises**.

**We** do cover loss resulting from or occurring as a consequence of any power or utility service interruption if the cause of that interruption is covered under SECTION I and occurs on the **residence premises**.

j. COLLAPSE, other than as provided in provision 11. ABRUPT COLLAPSE of OTHER COVERAGES – SECTION I.

k. **FUNGI**, WET OR DRY ROT OR BACTERIA, meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, **fungi**, wet or dry rot, or bacteria. Such loss is excluded regardless of any other cause or event

34

# EXHIBIT C

contributing concurrently or in any sequence to the loss.

This exclusion does not apply:
(1) when **fungi**, wet or dry rot, or bacteria results from FIRE OR LIGHTNING; or
(2) to the extent coverage is provided for under provision 12. **FUNGI**, WET OR DRY ROT, OR BACTERIA under OTHER COVERAGES – SECTION I with respect to loss caused by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C other than FIRE OR LIGHTNING.

l. **We** do not insure for loss, by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C, that alters the physical appearance of the metal roof covering but does not result in the penetration of water through the metal roof covering or does not result in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time.

Metal roof covering means the metal roofing material exposed to the weather, any underlayment applied for moisture protection and all flashings required in the replacement of a metal roof covering.
**We** do insure for loss, by a cause of loss identified under WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B or WHAT LOSSES ARE COVERED – COVERAGE C, to metal roof coverings that will allow the penetration of water through the metal roof covering or that results in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time.

35

# EXHIBIT C

2. **We** do not insure for any loss to property insured under COVERAGES A and B, regardless of the cause of the excluded event or damage; other causes of the loss; whether any other cause or event acts concurrently or in any sequence with the excluded event to produce the loss; whether the loss or event occurs suddenly or gradually, involves isolated or widespread damage or occurs as a result of any combination of these; or whether the loss is caused by, results from, consists of, involves or is contributed to by natural, human, animal or plant forces that is caused by, arises from, contributed to, by or consisting of:

a. (1) FREEZING of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or a household appliance; or
   (2) leakage, discharge, or overflow from within the system or appliance caused by FREEZING;
   while the dwelling is vacant, unoccupied, or being constructed and **you** have not used reasonable care to maintain heat in the building or shut off the water supply and drain the system and appliances of water.

b. FREEZING; thawing; pressure or weight of water or ice, whether driven by wind or not, to a:
   (1) fence;
   (2) driveway, walkway, or patio;
   (3) spa, swimming pool or pond;
   (4) foundation, retaining wall or bulkhead; or
   (5) pier, wharf or dock.

c. **THEFT** in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

d. VANDALISM and malicious mischief if the dwelling has been vacant or unoccupied for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

# EXHIBIT C

e. (1) WEAR AND TEAR, marring, deterioration, fading, oxidation, weather conditions;

(2) continuous or repeated seepage or leakage of water or steam over weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

(3) inherent vice, latent defect, or mechanical breakdown;

(4) smog, rust, corrosion or other decay;

(5) smoke from agricultural smudging or industrial operations;

(6) presence, release, discharge or dispersal of:

    (a) **pollutants**; or

    (b) soil corrosives, including but not limited to chemicals, compounds, elements, suspensions, gels or crystals forming in the soil; unless the discharge, dispersal, seepage, migration, release or escape is itself caused by one or more of the causes of loss identified under WHAT LOSSES ARE COVERED – COVERAGE C of this policy;

(7) cracking, shrinking, sagging, bulging, bending, expansion or settling of driveways, walkways, patios, foundations, pavements, walls, floors, roofs or ceilings;

(8) the expansion and/or contraction of concrete streets or other paved roadways, commonly referred to as street creep;

(9) birds, vermin, rodents or insects;

(10) nesting, infestation or discharge or release of waste products or secretions, by any animals;

(11) animals owned or kept by an **insured**; or

(12) growth of or pressure from the roots of trees, shrubs or other plants.

# EXHIBIT C

If a loss excluded under 2. e. above causes or results in water to escape suddenly and accidentally from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, **we** do cover the direct physical loss caused by the water, including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which this water escaped.

f.   WEATHER CONDITIONS.

g.   ACTS OR DECISIONS, including the failure to act or decide, whether intentional or unintentional, or whether negligent, wrongful or without fault, of any person, group, organization or governmental body, whether an **insured** or not.

This provision does not apply to an **insured's** acts or decisions, including the failure to act or decide, excluded under provision 1., sections d. and h. above.

h.   FAULTY, DEFECTIVE OR INADEQUATE:
    (1) planning, zoning, development, surveying or siting;
    (2) establishment or enforcement of building codes or standards for construction or materials;
    (3) design, specifications, construction, renovation, remodeling, repair, grading, compaction or workmanship;
    (4) materials, parts or equipment used in construction, renovation, remodeling, repair, grading or compaction; or
    (5) maintenance;
of part or all of any property whether on or off the **residence premises**. This exclusion does not apply to the use of defective materials or methods for which coverage is afforded under section f. of provision 11. ABRUPT COLLAPSE of OTHER COVERAGES – SECTION I.

# EXHIBIT C

i. Any cause of loss which occurs at a time when the **residence premises** has been vacant or unoccupied by **you** for a period of time in excess of 60 consecutive days before the loss.

Under items 1. and 2., any ensuing loss to property described in COVERAGES A and B not excluded or excepted in this policy is covered.

**CONDITIONS – SECTION I**

1. Insurable Interest and Limit of Liability
   Even if more than one person has an insurable interest in the property covered, **we** will not be liable in any one loss:
   a. to any **insured** for more than the amount of the **insured's** interest at the time of loss; or
   b. for more than the applicable limit of liability.

2. Deductible
   **We** will pay only when a loss covered under SECTION I or an expense covered under OTHER COVERAGES - SECTION I exceeds the deductible shown in the declarations, and then **we** will pay only the amount exceeding the deductible.

   The deductible shall apply to all losses except losses paid under COVERAGE D – LOSS OF USE and the following provisions of OTHER COVERAGES - SECTION I:

   3. FIRE DEPARTMENT SERVICE CHARGE
   5. LOCKS
   9. REFRIGERATED FOOD SPOILAGE
   10. CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY

   With respect to any one loss, if two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

3. Loss Settlement
   a. **We** will settle covered losses to personal property for the lowest of the following at the time of the loss:

# EXHIBIT C

    (1) the **actual cash value** of the lost or damaged property; or

    (2) the cost to repair the damaged property; or

    (3) the cost to replace the lost or damaged property with property of the same kind, of reasonably similar quality and usefulness, and in the same condition; or

    (4) the limit of liability applicable to the lost or damaged property.

b. **We** will settle covered losses to structures that are not buildings at the **actual cash value** at the time of loss, but not more than the amount required to repair or replace.

c. **We** will settle covered losses to buildings as follows:

    (1) If the amount of a covered loss does not exceed $5,000, **we** may, at **our** option, pay the **replacement cost** of the damaged or destroyed part of the building before repair or replacement is made.

    (2) If the loss is not subject to payment under (1) above, and:

        (a) if **you** elect not to repair or replace, **we** will settle for the lower of:

            i.   the **actual cash value** of the damaged or destroyed part of the building; or

            ii.  the limit of liability stated in the declarations for COVERAGE A for loss to the dwelling or for COVERAGE B for loss to other buildings.

        (b) if **you** elect to repair or replace, **we** will settle for the lower of:

            i.   the **actual cash value**; or

            ii.  the limit of liability stated in the declarations for COVERAGE A for loss to the dwelling or for COVERAGE B for loss to other buildings;

        until the repair or replacement has been completed as required.

# EXHIBIT C

After repair or replacement is completed as required, **we** will settle on a **replacement cost** basis for any added cost **you** actually and necessarily incurred to repair or replace the damaged or destroyed part of the building, not to exceed the amount of the limit of liability stated in the declarations for COVERAGE A for loss to the dwelling or for COVERAGE B for loss to other buildings.

Repair or replacement is considered completed as required if:

i.   it was started no more than six months after the date of initial settlement under this provision, and it was completed during the following 12 months; and

ii.  **we** were notified of the start date and the completion date within the 30 calendar days following each date.

Any loss claimed under (b) above that becomes ineligible for **replacement cost** settlement because repair or replacement was not completed as required will be settled as described under (a) above.

**Our** limit of liability for loss to any property insured under SECTION I shall not be increased because more than one person has an insurable interest in the property.

4.   **Your** Duties After Loss
In case of a loss to covered property, **you** and any **insured** must comply with the following duties. **We** have no duty or obligation to provide any coverage under this policy unless **you** or any **insured** making a claim under this policy have fully complied with the following conditions and duties.

# EXHIBIT C

a. Notification must be given promptly:
  (1) to **us**;
  (2) in case of **theft**, to the police; and
  (3) in case of loss under the CREDIT CARD or FUND TRANSFER CARD coverage, to the credit card or fund transfer card company.
b. Any **insured** must:
  (1) protect the property from further damage;
  (2) take reasonable and necessary measures required to protect the property; and
  (3) keep an accurate record of the cost of these measures.
c. Any **insured** must prepare and submit to **us** within 60 days of the loss an inventory of damaged or destroyed personal property showing in detail the quantity, description, date of acquisition, acquisition cost, fair market value, **replacement cost** or the **replacement cost** less **depreciation**, as applicable to the property, and the amount of loss claimed. All bills, receipts and related documents that substantiate the figures in the inventory must be attached to the inventory.
d. Any **insured** must as often as **we** reasonably require:
  (1) make the damaged property available for **our** inspection;
  (2) provide **us** with records and documents **we** request, and permit **us** to make copies;
  (3) submit to examinations under oath, not in the presence of any other **insured**, and sign and return to **us** the transcript of such examinations; and
  (4) answer oral or written interrogatories.
e. **You** and any **insured** must, within 60 days after **our** request, submit to **us your** signed, sworn proof of loss providing **us** with:
  (1) information on:
    (a) the time and cause of loss;
    (b) the interest of any **insured** and of all others in the property involved, and all liens on the property;

42

# EXHIBIT C

      (c) other insurance which may cover the loss;

      (d) changes in title, use, occupancy, location, possession of or exposure to the property during the term of the policy; and

      (e) specifications and plans of any damaged or destroyed building or fixture, and detailed estimates for repair of the damage and the amount of any encumbrances;

   (2) an inventory of damaged or destroyed personal property as described in c. above;

   (3) receipts for additional living expenses incurred; and

   (4) evidence or affidavit supporting a claim under the CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY coverage, stating the amount and cause of loss.

f. Any **insured** must help **us** and cooperate with **us** in the investigation of any claim presented under this policy.

5. Loss to a Pair or Set

In case of loss to a pair or set, **we** may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the value established for the property under Condition 3. Loss Settlement before and after the loss.

6. Glass Replacement

**We** will replace glass damaged in a loss covered under SECTION I with safety glazing material when required by ordinance or law.

7. Appraisal

If **you** and **we** fail to agree on the amount of a covered loss, and any **insured** making a claim has complied with all other conditions of the policy, either **you**, the **insured** or **us** can make a written request that the amount of loss be set by appraisal. If either **you**, any **insured** or **we** make a written request for appraisal that is accepted, each shall select a competent,

# EXHIBIT C

independent appraiser and notify the other of the appraiser's identity within 20 calendar days of receipt of the request.

The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 calendar days, **you** or **we** can request a judge of the court of the state in which the covered property is located to select an umpire with adequate notice to the other party.

The appraisers shall then set the amount of the loss pursuant to Condition 3. Loss Settlement, setting forth a **replacement cost** and **actual cash value**. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. A written award signed by any two of these three shall set the amount of the loss pursuant to Condition 3. Loss Settlement, setting forth a **replacement cost** and **actual cash value**.

Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by **you** and **us**.

8.   Other Insurance
If there is other applicable insurance for a loss covered under SECTION I, **we** will pay only **our** share of the loss. **Our** share is the proportion that the limit of liability applicable under SECTION I bears to the total amount of insurance covering the loss.

9.   Suits Against **Us**
**We** may not be sued unless all terms of this policy have been fully complied with. In addition, legal action may not be brought against **us** under SECTION I unless the action is started in conformance with the state laws that apply to this policy.

44

# EXHIBIT C

10. **Our** Option
    At **our** option, **we** may:
    a. Take part or all of the covered damaged property at the agreed or appraised value.
    b. Repair or rebuild or replace covered damaged or destroyed property with property of like or reasonably similar kind and quality.
    **We** will notify **you** of **our** intent, in writing, within 30 days after **we** receive **your** signed, sworn proof of loss.

11. Loss Payment
    **We** will pay **you** unless another payee is named in the policy or is legally entitled to receive payment. Loss is payable within 30 calendar days after **we** receive **your** signed, sworn proof of loss and:
    a. reach agreement with **you**;
    b. an appraisal award is filed with **us**; or
    c. a final judgment is entered.

12. Abandonment of Property
    **We** need not accept any property abandoned by any **insured**.

13. Mortgage Clause
    The word mortgagee includes trustee. If a mortgagee is named in this policy, any loss payable under COVERAGE A or COVERAGE B shall be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

    If **we** deny **your** claim, that denial shall not apply to a valid, covered claim of the mortgagee if the mortgagee:
    a. notifies **us** promptly of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware including any and all foreclosure proceedings involving the **residence premises**;
    b. pays any premium due under this policy when notified if **you** have neglected to pay the premium; and

# EXHIBIT C

c. submits a signed, sworn proof of loss within 60 calendar days after **we** notify the mortgagee of **your** failure to submit the required proof of loss.

Policy conditions relating to Other Insurance, Suits Against **Us** and Loss Payment apply to the mortgagee.

If the policy is cancelled or nonrenewed by **us**, the mortgagee shall be notified at least 10 calendar days before the date cancellation or nonrenewal will become effective.

If **we** pay the mortgagee for any loss and deny payment to **you**:
a. **we** are subrogated to all the rights of the mortgagee granted under the mortgage on the property, so **we** may recover such payment from **you**; or
b. at **our** option, **we** may pay to the mortgagee the lesser of the principal and interest due on the note on the date of loss or the amount payable under Condition 3. Loss Settlement; or
c. we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, **we** shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

14. No Benefit to Bailee
**We** will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

15. Recovered Property
If **you** or **we** recover any property for which **we** have made payment under this policy, **you** or **we** will notify the other of the recovery. At **your** option, the property will be returned to or

# EXHIBIT C

retained by **you** or it will become **our** property. If the recovered property is returned to or retained by **you**, **our** loss payment will be adjusted based on the amount of the payment **we** made for the recovered property.

16. **Your** Duty to Select and Maintain Policy Limits
At each policy renewal date, the amount of the limit of liability stated in the declarations for COVERAGE A may be adjusted to account for inflation, current building costs, changes in the cost of items of property and other factors. Any adjustment of the amount of the COVERAGE A limit of liability will result in proportionate adjustments of the amounts of limits of liability of COVERAGE B, COVERAGE C and COVERAGE D, and the amounts of the limits of liability of those OTHER COVERAGES – SECTION I, for which the limits of liability are a percentage of the COVERAGE A limit.

It is **your** duty, however, to select and maintain adequate amounts of insurance.

Any adjustment in the limits of liability listed above do not, in any way, represent, warrant, or guarantee that these adjustments will accurately account for inflation or that the amounts of coverage are adequate to repair or replace the damaged or destroyed property.

---

### SECTION II – LIABILITY COVERAGES

**COVERAGE E – PERSONAL LIABILITY**
**COVERAGE F – MEDICAL PAYMENTS TO OTHERS**

**WHAT LOSSES ARE COVERED – COVERAGE E**

1. **We** will pay for actual damages that any **insured** is legally obligated to pay due to **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

   Damages do not include:
   a. fines;

47

# EXHIBIT C

b. penalties;
c. restitution orders;
d. attorney's fees or costs; or
e. **punitive damages**.

2. **We** will defend any suit claiming damages for **bodily injury** or **property damage** to which this coverage applies. **We** will defend suit even if the allegations are groundless, false or fraudulent. Defense lawyers will be provided by **us**. **We** may pay the lawyer a flat fee to represent **you**. If any **insured** retains a lawyer for any claim, whether or not covered under this coverage, **we** will not pay the fees and costs charged by that lawyer. **Our** duty to defend ends when the amount **we** pay for damages resulting from one **occurrence** equals **our** limit of liability, including depositing funds into the court. **We** have no duty to defend any **insured** in any criminal action or proceeding in which the recovery of a fine, penalty or restitution is sought.

3. **We** may settle any claim or suit as **we** think appropriate.

## WHAT LOSSES ARE COVERED – COVERAGE F

**We** will pay reasonable expenses actually incurred for necessary medical and funeral services because of **bodily injury** sustained as a result of an accident to which this coverage applies. **We** will pay only for services actually incurred and reported to **us** within 3 years from the accident date. This coverage does not apply to **you** or regular residents of **your** household except **residence employees**.

This coverage applies to:

1. persons on an **insured location** with the permission of any **insured**, and

2. persons off an **insured location** if the **bodily injury**:
   a. arises out of a condition on an **insured location** or the ways immediately adjoining;
   b. is caused by the activities of any **insured**;

48

# EXHIBIT C

    c. is caused by a **residence employee** in the course of that **residence employee's** employment by any **insured**; or

    d. is caused by an animal owned by or in the care or custody of any **insured** except any animal that is excluded under 1.n. of WHAT LOSSES ARE NOT COVERED – EXCLUSIONS – SECTION II.

**WHAT LOSSES ARE NOT COVERED – EXCLUSIONS – SECTION II**

1. Under SECTION II **we** do not cover:

    a. **Bodily injury** or **property damage** arising out of:

       (1) Intentional acts or omissions committed by or at the direction of any **insured** that could reasonably be expected or intended by an **insured** to result in **bodily injury** or **property damage** even if the **bodily injury** or **property damage**:

          (a) is of a different kind, quality or degree than expected or intended; or

          (b) is sustained by a different person or entity than expected or intended.

       This applies whether or not the **insured** forms the intent or has the mental capacity to form the intent to cause **bodily injury** or **property damage**. **You** are deemed to intend the natural and probable consequences of **your** actions.

       This exclusion does not apply to **bodily injury** resulting from the use of reasonable force by any **insured** to protect persons or property.

       (2) Criminal acts or omissions, whether charged or not, committed by or at the direction of any **insured** that could reasonably be expected to result in **bodily injury** or **property damage** of any kind and in any degree.

# EXHIBIT C

(3) Acts or omissions committed by or at the direction of any **insured** while under the influence of any **drug**.

This exclusion does not apply to any acts or omissions committed while under the influence of any prescription **drug** legally dispensed in the U.S.A. and taken under the lawful order of and in compliance with the instructions of a health care professional licensed in the U.S.A.

b. **Bodily injury** or **property damage** arising out of any premises other than an **insured location** owned by or rented or leased to any **insured**.

c. **Bodily injury** or **property damage** arising out of or in connection with any **business** of any **insured**.

This exclusion does not apply:
(1) to the renting, leasing or holding for rental or lease of a residence of **yours** on an occasional basis, not exceeding 21 days during any one policy period, for the use only as a residence;
(2) to the renting, leasing or holding for rental or lease of a residence of **yours** in part, for the use as a residence by no more than two roomers or boarders; or
(3) to the renting, leasing or holding for rental or lease for use as a residence of that part of **your** dwelling on the **residence premises** that **you** do not occupy. This applies only if the dwelling is a two family dwelling.

d. **Bodily injury** or **property damage** arising out of the rendering of or failing to render professional services.

e. **Bodily injury** or **property damage** arising out of the manufacture, sale, delivery or transfer of any **drug** by any person.

f. **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of **motorized vehicles**, including trailers of any type. This exclusion does not apply to:

50

# EXHIBIT C

(1) trailers not towed by, attached to or carried on **motorized vehicles**;

(2) **motorized vehicles**:

    (a) designed to assist and used by the physically handicapped if:

        (i) not subject to **motorized vehicle registration**; and

        (ii) not designed, constructed or altered for travel on public roads;

    (b) stored on an **insured location** and inoperable;

    (c) used exclusively on an **insured location**;

    (d) designed for recreational use off public roads, not subject to **motorized vehicle registration** and not owned by any **insured**;

    (e) motorized golf carts not licensed and not required to be licensed for highway use; or

    (f) off an **insured location** and the **motorized vehicle** is:

        (i) designed as a toy vehicle for use by children under thirteen years of age;

        (ii) powered by one or more batteries; and

        (iii) not built or modified after manufacture to exceed a speed of five miles per hour on level ground.

g. **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of watercraft:

(1) exceeding 26 feet 5 inches in overall length;

(2) powered by any inboard, jet-drive or inboard/outboard motor, and owned by, rented or leased to any **insured**;

(3) powered by any inboard, jet-drive or inboard/outboard motor exceeding 50 horsepower, and owned by, rented or leased to any **insured**; or

(4) powered by one or more outboard motors with a total of 25 or more horsepower, and owned by, rented or leased to any **insured**.

# EXHIBIT C

This exclusion does not apply while the watercraft is on an **insured location** or stored on land elsewhere.

h. Arising out of the ownership, maintenance, use, loading or unloading of an aircraft. An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. **Bodily injury** or **property damage** arising out of any **insured's**:
   (1) entrustment to any other person;
   (2) vicarious parental liability, whether or not imposed by law, for the actions of a child or minor relating to the operation, maintenance, loading or unloading; or
   (3) supervision of any other person in the operation, maintenance, loading or unloading;

   of any **motorized vehicle**, including trailers of any type, or of any watercraft or aircraft not covered under SECTION II.

j. Caused directly or indirectly by war, including the following and any consequence of any of the following:
   (1) undeclared war, civil war, insurrection, rebellion or revolution;
   (2) warlike act by a military force or military personnel; or
   (3) destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k. **Bodily injury** or **property damage** arising out of, in connection with, aggravated by, or consisting of **pollutants**.

l. **Bodily injury** or **property damage** arising out of exposure to lead paint or other lead-based products.

m. **Bodily injury** or **property damage** arising out of exposure to asbestos.

n. **Bodily injury** or **property damage** arising out of the ownership, custody of, or care for the following pure or mixed breed dogs:
   (1) Pit Bull (also known as an American Pit Bull Terrier, an American Staffordshire Terrier, or a Staffordshire Bull Terrier);

52

# EXHIBIT C

    (2) Rottweiler; or
    (3) Canary Dog (also known as a Presa Canario or a Perro de Presa Canario);

o. **Bodily injury** arising out of the transmission by any person of any disease or of any organisms or agents capable of causing such disease through:
    (1) personal physical contact of any person with any other person; or
    (2) the transmission of any person's body fluids to any other person.

p. **Bodily injury** arising out of actual, alleged or threatened:
    (1) sexual misconduct, including but not limited to sexual harassment, sexual abuse and sexual molestation;
    (2) corporal punishment; or
    (3) physical, emotional or mental abuse;
    whether or not committed with the intent to produce **bodily injury**.

q. **Bodily injury** or **property damage** consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by **fungi**, wet or dry rot, or bacteria.
This includes:
    (1) the cost of **remediation**, testing, monitoring, abating, mitigating, removing or disposing of **fungi**, wet or dry rot, or bacteria;
    (2) any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with **bodily injury** or **property damage** consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by **fungi**, wet or dry rot, or bacteria, of the activities described in (1) above;
    (3) any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such **bodily injury** or **property damage**, damages, loss, cost, payment or expense; and

# EXHIBIT C

(4) liability imposed upon any **insured** by any governmental authority for **bodily injury** or **property damage** consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by **fungi**, wet or dry rot, or bacteria.

r. Liability imposed for **punitive damages**.

s. **Bodily injury** or **property damage** arising out of the liability assumed by the **insured** under any contract or agreement except any indemnity obligation assumed by the **insured** under a written contract directly relating to the ownership, maintenance or use of the **residence premises**.

t. **Bodily injury** or **property damage** arising out of the liability for claims made against any **insured** arising out of the sale or transfer of the **insured** premises or other real estate including but not limited to any claims made against any **insured** for fraud, misrepresentation (negligent or otherwise), failure to disclose or any other claim made against any **insured** arising out of the sale or transfer of real estate.

u. **Bodily injury** or **property damage** arising out of failure to supervise or the negligent supervision of a person that results in one or more of the excluded events in e., o. and p. above.

v. **Bodily injury** or **property damage** arising out of any written or oral statement made by **you** or others on **your** behalf which is material to any financial transaction.

2. Under COVERAGE E **we** do not cover:

a. **Bodily injury** to **you** or any **insured** within the meaning of part 1. or 2. of **insured** as defined, or anyone residing in **your** household.

b. **Bodily injury** to any person when the ultimate benefits of indemnification accrue directly or indirectly to **you** or any **insured** within the meaning of part 1. or 2. of **insured** as defined, or anyone residing in **your** household.

# EXHIBIT C

   c. **Bodily injury** or **property damage** if insurance is or can be afforded under any nuclear energy liability policy.

   d. **Bodily injury** to any person who qualifies to receive any benefits required to be provided or voluntarily provided by any **insured** under any:

      (1) workers' compensation law;

      (2) non-occupational disability law; or

      (3) occupational disease law.

   e. **Property damage** to property owned by any **insured** or any other resident of **your** household.

   f. **Property damage** to any property:

      (1) rented or leased to;

      (2) occupied or used by; or

      (3) in the care, custody or control of;

     any **insured**, unless the **property damage** is caused by fire, smoke or explosion.

   g. Liability:

      (1) for any loss assessment charged against **you** as a member of an association, corporation or community of property owners; or

      (2) under any contract or agreement.

        **We** do cover liability for written contracts that directly relate to the ownership, maintenance or use of an **insured location** unless excluded in (1) above or elsewhere in this policy.

   h. **Bodily injury** that results from emotional distress arising out of economic loss including, but not limited to, contractual or employment-related disputes.

   i. The fees and costs charged by any lawyer retained by any **insured** in any suit.

3.  Under COVERAGE F **we** do not cover **bodily injury**:

   a. To **you** or any other person residing on any part of an **insured location**, except **residence employees**.

   b. To a **residence employee** if the **bodily injury**:

      (1) occurs off the **insured location**; and

      (2) does not arise out of or in the course of the **residence employee's** employment by an **insured**.

# EXHIBIT C

   c.  To any person eligible to receive benefits for the same **bodily injury**:
      (1)  voluntarily provided; or
      (2)  required to be provided;
          under any:
          (a)  workers' compensation law;
          (b)  non-occupational disability law; or
          (c)  occupational disease law.
   d.  From any:
      (1)  nuclear reaction;
      (2)  nuclear radiation; or
      (3)  radioactive contamination;
          all whether controlled or uncontrolled or however caused; or
      (4)  any consequence of any of these.

## ADDITIONAL PAYMENTS – SECTION II

In addition to the limits of liability, **we** will pay:

1.    CLAIM EXPENSES
      **We** will pay:
   a.  All settlement and defense costs **we** incur.
   b.  Interest on damages covered under COVERAGE E on that portion of a judgment that is within **our** limit of liability, except:
      (1)  if **we** offer to pay **our** limit of liability before judgment, **we** will not pay any interest thereafter including any prejudgment or post judgment interest; or
      (2)  if a judgment is rendered, **we** will not pay interest after **our** limit of liability has been paid, tendered or deposited into the court.
   c.  Loss of net earnings, but not other income, because of attendance at hearings, trials or depositions at **our** request.
   d.  Other reasonable expenses an **insured** actually incurs at **our** request.
   e.  Prejudgment interest awarded against the **insured** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

# EXHIBIT C

    f.  Premiums on appeal bonds or attachment bonds required in any suit **we** defend. **We** will not pay the premium for:

        (1)  any bond in excess of the limits of liability; or

        (2)  an appeal bond for that portion of a judgment that is not covered under COVERAGE E.

    **We** may apply for or furnish any such bonds and **we** will pay for such bonds.

2.  FIRST AID EXPENSES

    **We** will pay reasonable expenses any **insured** actually incurs for first aid to others because of **bodily injury** covered under SECTION II. **We** will not pay for first aid to **you** or any other **insured**.

3.  DAMAGE TO PROPERTY OF OTHERS

    **We** will pay on a **replacement cost** basis up to $500 per **occurrence** for **property damage** to property of others if that damage is caused by any **insured**.

    **We** will not pay for **property damage**:

    a.  To the extent of any amount recoverable under SECTION I of this policy.

    b.  Which is either expected or intended by an **insured** age 13 or older or which is the result of an **insured's** intentional or criminal act when the **insured** is age 13 or older. Any **insured** age 13 or older is deemed to intend the natural and probable consequence of his/her actions.

    c.  To property owned by or rented or leased to any **insured**, any other resident of **your** household or a tenant of any **insured**.

    d.  Arising out of or in connection with any **insured's business**.

    e.  Arising out of any acts or omissions in connection with a premises, other than an **insured location**, that is owned by, controlled by, rented to, or leased to any **insured**.

    f.  Arising out of the ownership, maintenance, use, loading, or unloading of any vehicle. This includes **motorized vehicles**, trailers, watercraft, or aircraft, of any type.

# EXHIBIT C

This exclusion does not apply to **motorized vehicles** designed for recreational use off public roads, not subject to **motorized vehicle registration** and not owned by any **insured**.

g. Arising out of any **insured's**:

   (1) entrustment to any other person;

   (2) vicarious parental liability, whether or not imposed by statute, for the actions of a child or minor relating to the maintenance, use, loading or unloading; or

   (3) supervision of any person in the maintenance, use, loading or unloading;

   of **motorized vehicles**, including trailers of any type, watercraft or aircraft.

h. Arising out of the ownership of, custody of, or the care for a pure or mixed breed American pit bull terrier (also known as an American Staffordshire terrier, pit bull terrier or pit bull), Rottweiler or Canary (also known as a Presa Canario or a Perro de Presa Canario) dog.

4. LOSS ASSESSMENT

**We** will pay up to $1,000 for **your** share of loss assessment charged during the policy period against **you** by a corporation or association of property owners, when the assessment is made as a result of:

a. **bodily injury** or **property damage** not excluded under SECTION II of this policy; or

b. liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   (1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

# EXHIBIT C

This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises**.

**We** do not cover loss assessments charged against **you** or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most **we** will pay for loss arising out of:
a. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or
b. a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:
a. WHAT LOSSES ARE NOT COVERED – EXCLUSIONS – SECTION II, exclusion 2.g.(1).
b. POLICY PERIOD provision, under SECTION III – GENERAL PROVISIONS.

**CONDITIONS – SECTION II**

1. Limit of Liability
   Regardless of the number of **insureds**, persons injured, claims made, or suits brought, the limit of liability stated in the declarations for COVERAGE E is the most **we** will pay for **bodily injury** and **property damage** resulting from any one **occurrence**. **Bodily injury** to one person includes but is not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and includes imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention sustained as the result of the same injuries by:
   a. the injured person; and
   b. any other person.

# EXHIBIT C

If any **insured** has been insured for more than one policy period under this or any other homeowners policy issued by **us**, and an accident, including continuous or repeated injurious exposure to essentially the same conditions, results in **bodily injury** or **property damage** during more than one of these policy periods, the limits of liability of two or more of these policy periods may not be added together, combined, or stacked to increase the coverage for this **bodily injury** or **property damage**.

**We** will not pay any claims for **bodily injury** or **property damage** after **we** have paid the amount of the applicable limit of liability.

COVERAGE F is the most **we** will pay for all medical expenses because of **bodily injury** to one person as the result of any one accident.

2. Duties After Loss
   a. In the event of any **occurrence**, **we** must be notified promptly and informed of the time, place and circumstances of the **occurrence**, including the names and addresses of persons involved, injured persons and witnesses.
   b. Any **insured** must immediately forward to **us** every notice, demand, summons or other process relating to the accident or **occurrence**.
   c. Any **insured** shall cooperate with **us** in the investigation of any claim and shall, at **our** request:
      (1) attend depositions, hearings and trials;
      (2) assist in:
         (a) making settlements;
         (b) securing and giving evidence;
         (c) obtaining the attendance of witnesses; and
         (d) the conduct of suits;
      (3) submit to examinations under oath; and
      (4) authorize **us** to obtain any documentation **we** reasonably require in investigating any claim.

60

# EXHIBIT C

d. **Insureds** shall not, except at their own cost, voluntarily:
  (1) make any payment or assume any obligation; or
  (2) incur any expense other than for first aid to others at the time of **bodily injury**.
e. Under provision 3. DAMAGE TO PROPERTY OF OTHERS of ADDITIONAL PAYMENTS – SECTION II, any **insured** shall, within 60 days after the loss:
  (1) give **us** a sworn statement of loss; and
  (2) make the damaged property available for **our** inspection, if the property is within the **insured's** control.

3. Duties of an Injured Person – COVERAGE F
  a. Any injured person or someone acting on behalf of the injured person shall:
    (1) promptly give **us** written proof of any claim and any further information requested by **us**, under oath if required; and
    (2) execute authorizations to allow **us** to obtain any records or documentation **we** reasonably require.
  b. Any injured person shall, when and as often as **we** reasonably require, submit to physical examinations by physicians **we** choose.

4. Other Insurance – COVERAGE E
  This insurance is excess over any other insurance. If there is insurance provided by **us** under any other policy affording Personal Liability coverage:
  a. The limits of liability of the applicable policies may not be added together, combined, or stacked to increase the coverage for any one **occurrence**.
  b. The one highest limit of any of the policies, provided by **us**, applies.

  This provision does not apply to other insurance written as excess over the limits of liability of this policy.

# EXHIBIT C

5. Payment of Claim – COVERAGE F

**We** may pay the injured person or any person or organization rendering services. Payment by **us** shall reduce the amount **we** owe. Payment by **us** is not an admission:

a. of liability by **us** or any **insured**; or

b. that the medical expenses were reasonable or necessary or otherwise covered under SECTION II.

6. Severability of Insurance

This insurance applies separately to each **insured**, however, this condition will not increase **our** limit of liability for any one **occurrence**.

This severability of insurance provision in no way alters or affects any provision of the policy indicating that it applies to "any **insured**". Any limiting or exclusionary provision in the policy indicating that it applies to "any **insured**" means that such limiting or exclusionary provision is applicable as to any **insured** under this policy. Where **we** use the phrase "any **insured**", **we** intend that such provisions not be limited to any one **insured** and that such provisions are applicable to any **insured** under the policy.

7. Suits Against **Us**

**We** may not be sued until all terms of this policy have been fully compiled with. In addition, under COVERAGE E, legal action may not be brought against **us** until the obligation to pay, by any **insured**, is finally determined either by:

a. judgment against the **insured** after actual trial; or

b. written agreement of the **insured**, the claimant and **us**.

No one has the right to bring **us** into a suit to determine the liability of any **insured**.

# EXHIBIT C

## SECTION III – GENERAL PROVISIONS

### AAA MEMBERSHIP REQUIREMENT

A valid membership in the American Automobile Association (AAA) or its divisions or affiliates is required as a prerequisite to obtaining and renewing this policy.

### BANKRUPTCY

The bankruptcy or insolvency of any **insured** shall not relieve **us** of any obligations under this policy.

### CHANGES AND LIBERALIZATION

This policy may not be changed unless **we** authorize and agree upon the change in writing. **We** will mail or deliver a written endorsement reflecting the change. Mailing or delivery by **us** to the named **insured** in the declarations at the last address on record shall constitute proof of endorsement or notice.

If **we** make changes under this edition of the policy that broaden coverage without charge, this policy will automatically provide the broadened coverages as of the date **we** implement them, provided that date is during the policy period. This provision does not apply when **we** issue a new edition of the policy.

### CONCEALMENT OR MISREPRESENTATION

This entire policy will be void and all coverages forfeited, and payment will not be made to any **insured**, if before or after a loss, any **insured** has:

1.   intentionally concealed or misrepresented any material fact or circumstance;

2.   engaged in fraudulent conduct; or

3.   made false statements;

relating to this insurance, the insurance application, the loss, the presentation of the claim or any other fact or circumstance material to the investigation and adjustment of the claim.

# EXHIBIT C

**INFLATION GUARD**

It is agreed that the Limits of Liability specified in the declarations of this policy for COVERAGES A, B, C and D may be increased at each policy renewal date based on updated information received from a vendor of **our** choice. This information may include, but is not limited to, individual property characteristics and general inflation factors. Limits shown in **your** current declarations will be used to determine the limits of liability during this policy period.

**POLICY PERIOD**

This policy applies only to:

1. loss under SECTION I; and

2. **bodily injury** or **property damage** under SECTION II;

which occurs during the policy period stated in the declarations.

**STATEMENTS IN THE APPLICATION FOR INSURANCE**

By accepting this policy, **you** agree:

1. The facts stated in the application for insurance and the declarations are correct and accurate. **We** have issued the policy in reliance upon the truth of **your** statements.

   Any misrepresentations, omissions, concealment of facts and incorrect statements in **your** application may prevent recovery under the policy if they are:
   a. fraudulent; or
   b. material either to the acceptance of the risk, or to the hazard assumed by **us**, such that **we** would either not have issued the insurance or contract; would not have issued it at the same premium rate; would not have issued insurance in as large an amount; or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had

# EXHIBIT C

been made known to the insurer as required either by the application for the policy or contract or otherwise.

2. This policy contains all of the agreements between **you** and **us**.

3. **You**, or someone on **your** behalf, will notify **us** promptly of any change to the facts affecting this insurance, including but not limited to:
   a. any change of the location of, the title to, the use of, or the exposure to the **residence premises**; or
   b. any remodeling, addition, or new construction which will increase the cost to replace the buildings covered under COVERAGE A and COVERAGE B by $5,000 or more.

## SUBROGATION

When **we** pay, any rights of recovery from someone else become **ours** up to the amount **we** have paid. Any **insured** must:

1. protect these rights; and

2. help **us** enforce them.

If **we** recover damages through subrogation, **we** will pay **you** the amount recovered not to exceed the applicable deductible. **We** will be entitled to a recovery only after **you** have been fully compensated for the loss sustained.

**You** may waive all rights of recovery against any person. This waiver must be executed in writing before a loss occurs.

Subrogation does not apply to COVERAGE E, or to coverage under provision 3. DAMAGE OF PROPERTY OF OTHERS of ADDITIONAL PAYMENTS – SECTION II.

# EXHIBIT C

**TERMINATION**

1.  Cancellation by **You**

    **You** may cancel by:
    a.  returning this policy to **us**; or
    b.  giving **us** advance notice of the date cancellation is to take effect.

2.  Cancellation by **Us**

    **We** may cancel by mailing to **you** at the last address known by **us**:
    a.  At least 10 days notice if cancellation is for nonpayment of premium.
    b.  At least 30 days notice if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy.
    c.  At least 30 days notice in all other cases.
    After this policy is in effect for 60 days, or if this is a renewal or continuation policy, **we** will cancel only:
    a.  for nonpayment of premium;
    b.  if there has been a material misrepresentation of fact which if known to **us** would have caused **us** not to issue the policy; or
    c.  if the risk has changed substantially since the policy was issued.

    This can be done be letting **you** know at least 30 days before the date cancellation takes effect.

3.  Nonrenewal by **You**

    If **we** offer to renew or continue and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

    If **you** obtain other insurance on the **residence premises**, any similar insurance provided by this policy will terminate as to that **residence**

# EXHIBIT C

**premises** and covered property on the effective date of the other insurance.

4. Nonrenewal by **Us**

   If **we** decide not to renew or continue this policy, **we** will mail notice to **you** at the last address known by **us**. Notice will be mailed at least 30 days before the end of the policy period.

5. Method of Mailing Notice

   Proof of mailing of any notice shall be sufficient proof of notice.

6. Premium Refund
   a. If this policy is cancelled, **you** may either be entitled to a refund, or **you** may owe additional premium. If **you** are entitled to a refund, **we** will send it to **you**. However, making or offering to make a refund is not a condition of cancellation.
   b. If this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.
   c. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OR ASSIGNMENT

1. This policy or any interests in it may not be assigned without **our** written consent.

2. In case of the death of a named **insured** listed in the declarations or of that **insured's** spouse, if residing in the same household at the time of the **insured's** death:
   a. the deceased's interest in this policy will be transferred to the legal representative of the deceased, but only with respect to the premises and property of the deceased covered under this policy at the time of the death; and
   b. the following persons will be insured under the policy:

# EXHIBIT C

    (1) any member of the deceased's household who is an **insured** at the time of the death, but only while a resident of the **residence premises**; and

    (2) with respect to the property of the deceased that is insured under this policy, the person having legal temporary custody of the property until appointment and qualification of a legal representative.

Coverage under this provision will only be provided until the end of the policy period during which the death occurred. However, if the death occurred after **we** offered to renew this policy, **we** will continue coverage until the end of the policy period for which **we** offered renewal, contingent upon payment of the premium.

**YOUR PREMIUM**

**You** agree to pay:

1. the premium stated in the declarations for the policy period; and

2. any additional premium resulting during the policy period from:
   a. the correction or completion of; or
   b. any changes to;

any information on file that affects the premium for this insurance.

In Witness Whereof, **we** have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by **our** authorized representative.

# EXHIBIT C

_Haid C. Louis_ Secretary
_____

_[signature]_ President
_____

69

# EXHIBIT C

Please keep **your** Declarations Certificates and
Endorsements with **your** policy.

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

# EXHIBIT C